IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 23-cv-00802-RM-SBP

ELIZABETH TRUJILLO, and
HAROLD RAMIREZ,

    Plaintiffs,

v.

MOORE BROTHERS, INC.,
FALCON EXPRESS, LLC, and
GEORGE A. MYERS,

    Defendants.

---

## ORDER

---

This auto negligence case is before the Court on Defendants' Motion to Enforce Settlement (ECF No. 51), seeking a ruling that the parties reached a valid settlement. The Motion has been briefed. (ECF Nos. 54, 56.) The Court finds that no settlement agreement was reached, and therefore the Motion is denied.

**I.    LEGAL STANDARD**

"A settlement agreement is a contract to end judicial proceedings," the existence of which is generally a question of fact. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001). A contract must be definite in its terms to be enforceable, and "it must appear that further negotiations are not required to work out important and essential terms." *N.Y. Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996). "Agreements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement." *DiFrancesco*, 39 P.3d at 1248. Thus, if essential aspects of the agreement are

unsettled or the written correspondence between the parties is vague and indefinite as to an essential element of the agreement, then there is no contract. *See K N Energy*, 80 F.3d at 409; *see also DiFrancesco*, 39 P.3d at 1248 ("An agreement cannot be enforced unless the terms are sufficiently definite to allow a court to determine whether the parties have complied with them.").

Because communications between parties may be intended only as preliminary negotiation, courts must consider whether the parties meant to contract by their correspondence or were only settling the terms of an agreement into which they formally proposed to enter after its particulars had been adjusted, and by which alone they intended to be bound. *Id.*; *see also Shoels v. Klebold*, 375 F.3d 1054, 1063-64 (10th Cir. 2004) ("Under Colorado law, an acceptance conditioned on reaching a later, more detailed agreement is not binding. Moreover, correspondence during the course of negotiations is often best construed as being conditioned in this way.") (citation omitted). Where, as here, the material communications between the parties are undisputed, the Court may decide their legal significance to determine as a matter of law whether an enforceable agreement exists. *See id.* at 409-10.

**II.     BACKGROUND**

Plaintiffs sued Defendants after sustaining significant injuries in an auto accident involving a semi-truck. On August 24, 2023, Plaintiffs' counsel sent Defendants' counsel a lengthy email referencing settlement. In pertinent part, the email states as follows:

> In full transparency we are seeking, and now making, a policies limits demand. Brutal honesty, if the policy is $10M or below we are requesting policy limits now—by September 12th. I understand that if it's close to $10M, then we'll go ahead and spend the $234k on experts which we'll need to justify an 8-figure settlement and we'll put this on the back burner and address once all the depositions are done.

> However, if it's sadly just $1M, then we'll need to do this sooner rather than later, and to that end to consummate this matter, we require 1) the INTs be answered with verified signatures, 2) all documents back from the subpoenas, and lastly 3) your 3 defendants to complete the attached one-page affidavits.  These items will ensure your human client and his Falcon company did not purchase additional insurance, and no other entity or person has applicable coverage.
>
> Brian, you shared with Terra and Carlo last week that after your research there is only $1M policy for the driver and CMVs in the crash.  We want to work with you over the next few weeks to wrap this up at $1M if that turns out to be the case *After* confirming with INTs, affidavits, and the returned documents from the subpoenas.  We're literally about to spend $132,700 on costs for our experts and have rescheduled the exams with the functional capacity expert, certified life care planner, economist, etc., because a $1M will not make this family whole.

(ECF No. 51-1 at 1-2.)  The email goes on to list eight "items we'll need to settle this matter in September," which include responses to outstanding discovery requests, three affidavits of insurance, and various scheduling issues.  (*Id.* at 2-3.)

On September 8, 2023, Defendants' counsel sent two emails in response.  The first states that "Nationwide is interested in accepting the policy limits demand.  There are some details we need to discuss.  Can one or both of you give me a quick call?"  (ECF No. 51-4 at 1.)  The second states as follows:

> I have not seen a response to the email below or to my earlier voicemail.  As I explained in the voicemail, Nationwide is interested in resolving the claims against my clients, George Myers, Falcon Express, LLC and Moore Brothers, Inc. for the remaining policy limits, as you have demanded.  As I indicated earlier, the policy has a $1,000,000 combined single limit, covering both property damages and bodily injury claims.  The carrier previously made a property damage payment (for your clients' vehicle) of $5,973.68, leaving $994,026.32.  That remaining limit is being offered in exchange for a full and final release of all insureds.  You already have a copy of the policy, and we are in the process of collecting the signed affidavits of no other insurance coverage you requested.  We expect to have those by Tuesday, if not sooner.
>
> As I indicated in the earlier communications, there are some details we need to discuss to get things moving forward.  Please give me a call at your earliest convenience.

(*Id.*)

3

Three days later, on September 11, Defendants' counsel sent an email with the signed affidavits of insurance attached. (ECF No. 51-5 at 1.) Later that day, Defendants' counsel sent Plaintiffs' counsel another email with Defendants' F.R.C.P. 26(a)(1) Sixth Supplemental Disclosure and links to written discovery responses and verification pages. (ECF No. 51-7 at 1.)

The next day, on September 12, Plaintiffs' counsel responded via email, stating:

> Thank you for getting us the affidavits, and the discovery responses. We know you went above and beyond with the affidavits, and we appreciate you doing that. We're reviewing them now and will respond in writing before the week is out. If there is only $1M insurance for all CMVs/companies/etc., then your clients are underinsured considering their operations/assets/CMVs owned, etc. We offered to settle for policy limits by September 12th and to that end, Defendants have not offered limits, and therefore the time to accept the offer has passed. Plaintiffs are revoking a policy limit offer at this time. We're still trying to interpret the contract as it says $2M, and we've got some investigation to do on the shipper side of the case. If ultimately there is only $1M in coverage, then perhaps we can set up mediation in early Oct to talk about corporation contributions above the underinsured policy to reach a global settlement."

(ECF No. 51-14 at 1.) The email goes on to discuss how the case might move forward.

Defendants' counsel responded less than an hour later, stating:

> We accepted the demand already. My previous email indicated the full remaining policy limits were offered. There was $1 million in total limits. Just under $6,000 was previously paid to your clients for property damage. The remaining sum was tendered, in exchange for a full and final release.

(ECF No. 51-15 at 1.) Defendants' counsel followed up with a two-page letter, reiterating Defendants' position that they had accepted Plaintiffs' policy limits demand via email and voicemail on September 8 and by providing the affidavits of insurance on September 11. (ECF No. 51-16 at 1-2.) The next day, on September 13, Defendants counsel sent another letter, stating that if Plaintiffs did not agree that a settlement had been reached, Defendants would be asking the Court to enforce the settlement. (ECF No. 51-18 at 1-3.)

**III.    ANALYSIS**

"The essential elements of a settlement agreement are a definitive offer and acceptance, consideration, and parties who have the capacity and authority to agree." *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997) (quotation omitted).  On the current record, the Court finds Defendants have not established a definitive offer and acceptance.

First, although Plaintiffs' August 24 email states that Plaintiffs were making "a policies limits demand," there is no indication as to the parties' understanding or agreement on what those limits were.  The email lists several possibilities: "if the policy is $10M or below"; "if it's close to $10M"; and "if it's sadly just $1M."  While the email expresses Plaintiffs' intention "to work with [Defendants] over the next few weeks to wrap this up at $1M if that turns out to be the case," there is no definitive offer to settle the case for that amount.  Rather, the email contemplates that—if the limits are just $1 million—the parties should be able to settle the matter "*[a]fter* confirming with INTs, affidavits, and the returned documents from the subpoenas."  Thus, the email contemplates that before a settlement could occur, Plaintiffs would need to receive documents confirming that no coverage above $1 million was available.  This suggests the email was intended as a nonbinding agreement in principle, subject to further negotiations, instead of as a definitive offer to enter an enforceable contract.

Second, there is no unequivocal "acceptance" of any such offer by Defendants. "Acceptance is defined as words or conduct that, when objectively viewed, manifests an intent to accept the offer." *Scoular Co. v. Denny*, 151 P.3d 615, 619 (Colo. App. 2006).  In his September 8 emails, Defendants' counsel uses provisional language, reporting that Defendants' insurance carrier "is interested in accepting the policy limits demand" and "is interested in resolving the claims against [Defendants] for the remaining policy limits."  But "an acceptance

5

conditioned on reaching a later, more detailed agreement is not binding." *Shoels*, 375 F.3d at 1063.  "To establish the existence of a contract, the parties thereto must agree upon all essential elements." *Herman*, 978 F. Supp. at 977.  Here, both emails state that details still needed to be worked out and contemplate further discussions and exchanges of information before a binding agreement is reached.

In addition, Plaintiffs' August 24 email says nothing about the scope of any release Plaintiffs would be required to provide; meanwhile, Defendants' September 8 email references "a full and final release of all insureds."  Whether or not the parties foresaw it, the scope of the release may potentially become a significant issue due to Plaintiffs' recent efforts to amend the Complaint to include additional Defendants that may be insured under the policy or otherwise liable for Plaintiffs' injuries.  (*See* ECF No. 52.)  "Acceptance of an offer must be on the identical terms of the offer, and in the manner, if any, specified in the offer, without any changes."  *Id.*  Thus, to the extent Defendants made a counter-proposal by adding a term to the agreement concerning the scope of the release, their September 8 email cannot operate as an acceptance that completes the agreement.  *See id.*

### IV. CONCLUSION

For the reasons above, the Court DENIES the Motion to Enforce Settlement (ECF No. 51).

DATED this 13th day of December, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge